Dewey ANDERSON et al., Appellants,

v.

UNITED FUEL GAS COMPANY et al.,
Appellees.

Bernard HENSLEY et al., Appellants,

v.

Dewey ANDERSON et al., Appellees.

Court of Appeals of Kentucky.

Nov. 22, 1961.

Grannis Bach, Jackson, J. K. Wells,
Paintsville, H. Raymond Andrews, Jr.,

Charleston, W. Va., for Dewey Anderson, et al.

H. Raymond Andrews, Jr. and William Roy Rice, Charleston, W. Va., J. K. Wells, Paintsville, for United Fuel Gas Co., et al.

Henry L. Spencer, Jackson, for Bernard Hensley.

CULLEN, Commissioner.

On the appeal of Dewey Anderson, et al., the question is whether the circuit court correctly adjudged that an oil and gas lease held by the appellees covers two tracts of land for which Anderson held unrecorded deeds at the time the lease was executed by Anderson's grantors and their brothers and sisters, and that the lessees were bona fide purchasers for value so that the lease prevails over Anderson's unrecorded deeds.

On the appeal by Bernard Hensley, et al., the question is whether a certain deed in Dewey Anderson's chain of title covers all of one of the two tracts claimed by him, or whether it covers only part of the tract, leaving title to the other part in the appellants, who are children and nieces and nephews of Anderson's immediate grantors. The circuit court held that Anderson's deeds covered all of the tract in question.

We shall first consider the Dewey Anderson appeal

In 1939 the eight children of Granville Spencer executed deeds partitioning among themselves three adjoining tracts of land in which they had acquired joint interests under deeds from their grandfather and their father. Raymond Spencer was deeded a tract containing around 43 acres and Curnel Spencer was deeded a tract of around 48 acres. Later in 1939 Raymond and Curnel deeded their tracts to Dewey Anderson, but he did not record his deeds until 1955.

In 1954 the eight children of Granville Spencer executed an oil and gas lease to the United Fuel Gas Company, purporting to cover a tract of 488 acres. The first question on the Anderson appeal is whether the description in this lease covers the two tracts previously conveyed to Anderson in the deeds which at that time were unrecorded.

The lease described the lands by reference to lands of adjoining owners, and referred to a 1911 deed as the lessors' source of title. The difficulty with the description lies in the fact that the tract claimed by the lessees to be covered by the lease cannot be identified by reference to the lands of the adjoining owners named in the description. The description in the 1911 deed referred to in the lease as the source of title does adequately cover the tract claimed by the lessees, and it embraces the two parcels deeded to Anderson, but technically the lessors' source of title to the portion of the tract embracing the Anderson land was a deed of 1896 rather than the deed of 1911.

Anderson maintains that the description in the lease is so insufficient as to make the lease void. This is the only theory upon which he could prevail, because he is a *stranger* to the lease and his rights accrued before the lease was executed, so he is not in a position to claim he was misled by the description.

It is our opinion that in order for the lease to be held void the situation would have to be such that the land intended to be covered by the lease could not possibly be determined even as between the *parties*. Here, the *parties* are in complete agreement as to what land is covered by the lease. The lessors put the lessees in possession of the tract that the parties intended the lease to embrace. Furthermore, even though the description by reference to lands of adjoining owners was worthless, as between the parties the reference to the 1911 deed as the source of title could be resorted to for the purpose of identifying the land.

Although the description in the lease might not have been sufficient on its face it

was capable of being made sufficient as between the parties. Under these circumstances Anderson, as a stranger whose rights arose before the execution of the lease, has no standing to question the sufficiency of the description. Cf. Barnett v. Portwood, Ky., 328 S.W.2d 164.

Anderson contends that the lessees were not purchasers for value within the meaning of the recording statute, KRS 382.080, and therefore his unrecorded deeds should prevail over the lease. Under the terms of the lease the consideration was recited as being "one Dollar * *, * and * * * the covenants hereinafter contained on the part of the said Lessee, to be paid, kept and performed." The lease provided among other things for delay rentals in the amount of 50 cents per acre "payable annually in advance, beginning June 17, 1955." At the time the lease was executed the lessees not only paid the lessors the specified $1.00 but also paid them an amount equivalent to one year's rental, as a "bonus". Some incidental expenses were incurred by the lessees but no drilling was done on the portion of the tract embraced in Anderson's deeds before Anderson gave the lessees actual notice of his deeds.

Anderson relies upon Rader v. Shaffer, 186 Ky. 802, 218 S.W. 292, and Payton v. Morris, 240 Ky. 555, 42 S.W.2d 723, 725, as supporting his contention that the payments that had been made by the lessees here did not constitute a valuable consideration within the meaning of the recording statute. In those two cases the lessee had paid nothing but $1.00. The court said that the "substantial consideration" for the leases was the agreement to put down a well within a year or thereafter pay a certain rental, and that the lessees "had not paid any portion of the real consideration for the lease." In the instant case, however, the lessees had paid an amount equal to one year's rental ($244), and we think this can be considered a payment of a portion of "the real consideration for the lease".

Summers, in his treatise on Oil and Gas, Vol. 2, Sec. 231, p. 124, has this to say about what constitutes valuable consideration for an oil and gas lease:

"* * * But in the absence of an absolute legal duty on the part of the lessee to develop the land, or an actual expenditure of money therefor, it is submitted that under the ordinary modern oil and gas lease the lessee pays sufficient consideration to entitle him to the position of a bona fide purchaser for value, even though the amount paid on the execution of the lease, judged by the standards used as to other conveyances, may appear to be merely nominal. The value of a lease for oil and gas purposes on land situated in unproven or wildcat territory is wholly speculative. The lessee under the modern lease of land in unproven territory usually pays a fixed sum per acre upon the execution of the lease. In one sense this is a payment in advance of the so-called rental for the privilege of exploring the land for the first year, or some other definite period fixed in the lease. If the land has a more or less proven character, a much larger sum of money may be paid as a cash bonus upon the execution of the lease. The sum paid for the lease, whether large or small, practically always represents the market value of the lease as established by the bargaining between lessors and lessees in the particular community, and the competition between prospective lessees for desirable lands. The mere fact, therefore, that the sum paid by an oil and gas lessee upon the execution of a lease is small, and judged by normal standards may appear to be only nominal, should not prevent the lessee from asserting the position of a bona fide purchaser for value, for the payment made usually represents the market value of the lease."

We concur in the view expressed by Summers and we hold that the payments

made in the instant case constituted a valuable consideration.

■ Anderson further contends that the lessees were not purchasers without notice, within the meaning of the recording statute, because the circumstances respecting the record title of the lessors was such as to put upon the lessees a duty of making inquiry. The circumstances which it is claimed raised the duty of making inquiry were that a long period of time had elapsed since there had been any recorded conveyances of the land, plus the fact that there were some conveyances of record, back in 1939, indicating that the children of Granville Spencer had partitioned the land. We are not aware of any authority to the effect that the mere fact that the record title is old will create reasonable grounds for suspecting that the holders of the record title have sold the land. Nor do we find any basis for a holding that the fact that joint owners have partitioned their land among themselves would lead a prudent prospective purchaser to inquire as to whether any of the partitioned portions had later been sold to a stranger.

It is our opinion that the circuit court correctly decided the issues involved on the Anderson appeal.

■ With respect to the appeal by Bernard Hensley and others, the contention is that an 1896 deed in Anderson's chain of title did not cover a certain part of one of the tracts deeded to Anderson, and that Hensley and his coappellees own this part under a deed of 1903. It is claimed that the 1896 deed did not embrace any land on the west side of a certain branch, and that this land passed under the 1903 deed. This claim is supported only by the personal interpretation placed upon these deeds by one of the daughters of Granville Spencer, and by her testimony to the effect that the correct boundaries had been pointed out to her by her father.

From our own examination of the deeds it appears reasonably plain that the 1896 deed does embrace the land on the west side of the branch and the 1903 deed does not. Two surveyors who plotted the descriptions so located the land. We think the evidence amply supports the judgment on this point.

A motion to dismiss the Hensley appeal was passed to the merits. It is hereby overruled.

The judgment is affirmed on both appeals.